ERIE STONE COMPANY, a Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

TOLEDO STONE & GLASS SAND COMPANY, a Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 8005, 8006.

United States District Court
N. D. Ohio, W. D.
March 18, 1960.

Shumaker, Loop & Kendrick, Ross W. Shumaker, Toledo, Ohio, for plaintiffs.

Russell E. Ake, U. S. Atty., Cleveland, Ohio, Richard M. Colasurd, Asst. U. S. Atty., Toledo, Ohio, Howard A. Heffron, Acting Asst. Atty. Gen., Lyle M. Turner, Charles W. Mehaffy, Peter J. Donahue, Attys., Dept. of Justice, Washington, D. C., for defendant.

KLOEB, Chief Judge.

Plaintiffs, hereinafter referred to as "Taxpayers", filed separate complaints for the recovery of Internal Revenue taxes alleged to have been erroneously assessed against and collected from them by the Commissioner of Internal Revenue. Plaintiff, The Erie Stone Company, was, in the years 1951 through 1953, the owner and operator of two stone quarries, one located at Bluffton, Indiana, and the other at Huntington, Indiana. Plaintiff, Toledo Stone and Glass Sand Company, was, in the years 1951 through 1953, the owner and operator of a stone quarry at Silica, Ohio. Both suits involve the rate of percentage depletion to which the Taxpayers may be entitled on the gross income from their products in the taxable years 1951–1953, inclusive, under the Internal Revenue Code of 1939, as amended October 20, 1951, in force and effect in those years (26 U.S.C. §§ 23(m), and 114(b)(4)(A)(i)(ii)(iii), 1952 Ed.).

The cases were consolidated for the purpose of trial and after trial extensive briefs were filed by counsel for the consideration of the Court.

In both complaints, Taxpayers state alternative claims for relief. In their first claim, they assert that the product of their quarries was limestone of a metallurgical grade or chemical grade and was, therefore, entitled to percentage depletion at the rate of 15% as provided in Sec. 114(b)(4)(A)(iii) of the Internal Revenue Code of 1939. In the alternative claim for relief, Taxpayers assert that, if they do not qualify under the first claim for relief and are not entitled to a 15% depletion allowance, then they are entitled to deduct depletion at the rate of 10% on the ground that their product qualifies as dolomite.

Sec. 23 of the Internal Revenue Code of 1939 reads in part as follows:

"§ 23.  *Deductions from gross income.*  In computing net income there shall be allowed as deductions:

\*        \*        \*        \*        \*        \*

"(m) *Depletion.*  In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary.
\*        \*        \*".

"§ 114.  *Basis for depreciation and depletion*

\*        \*        \*        \*        \*        \*

"(b) *Basis for depletion*

\*        \*        \*        \*        \*        \*

"(4) (As Amended by Sec. 145 (a), Revenue Act of 1942, c. 619, 56 Stat. 798; Sec. 124(a), Revenue Act of 1943, c. 63, 58 Stat. 21; and Sec. 319(a), Revenue Act of 1951, c. 521, 65 Stat. 452) *Percentage depletion for coal and metal mines and for certain other mines and natural mineral deposits.—*

"(A) *In general.*  The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be—

"(i) in  the  case  of  \*  \*  \* stone,  \*  \*  \*  5 per centum,

"(ii) in  the  case  of  \*  \*  \* dolomite,  \*  \*  \*  10 per centum,

"(iii) in the case of * * * metallurgical grade limestone, chemical grade limestone, * * * 15 per centum, * * *
of the gross income from the property during the taxable year, * * ".

It is the position of Taxpayers that the product of their quarries in the taxable years was limestone of a metallurgical or chemical grade, within the meaning of the Statute, and as interpreted by this Court and the Sixth Circuit Court of Appeals in the Wagner Quarries case, hereinafter referred to, and that their product was capable of use for metallurgical or chemical purposes and is, therefore, entitled to a depletion allowance of 15%.

Defendant contends that the product of the Taxpayers was dolomite, that it was not limestone of a metallurgical or chemical grade capable of use for metallurgical or chemical purposes and that it, therefore, is entitled to a depletion percentage of 10%.

At the outset, there can be no question but that both parties agree that the product of these quarries was "dolomite" within the commonly accepted definition of "dolomite". However, Taxpayers, although conceding that their product is properly classified as "dolomite" take the position that it is a high-quality dolomitic limestone having a high-carbonate content and a very low percentage of impurities and suitable for metallurgical or chemical purposes, and that it, therefore, comes within the meaning of the Statute as interpreted by this Court and the Court of Appeals in the case of Wagner Quarries Company v. United States, D.C.N.D.Ohio, W.D.1957, 154 F.Supp. 655, affirmed 6 Cir., 1958, 260 F.2d 907.

In the opinion of the Court of Appeals, 260 F.2d on page 908, we find the following:

"If the District Court's finding that the taxpayer's limestone was of chemical or metallurgical grade within the meaning of the statute, was supported by substantial evidence, the question, as it seems to us, is one of fact. Some witnesses appeared orally and some testified by deposition. In the interest of considering whether the court below misapplied the congressional classification to the taxpayer's limestone, or that the court clearly and erroneously misapplied the quality test, we have examined the pertinent evidence upon that subject.

"(2) Based upon a fair appraisal of the testimony of the experts, a reasonable interpretation of congressional intent in using the words 'metallurgical grade limestone, chemical grade limestone,' would mean a limestone of high carbonate content with a very low silica or impurities percentage, capable of use for metallurgical or chemical purposes. The trial judge found substantially that this would be the common sense meaning of the terms as used and intended by Congress."

We have studied with great care the able arguments in the briefs of counsel on both sides, recognizing that the Statutes as they existed in the years in question (since amended) presented difficult problems for interpretation by the Courts in an effort to discern the intent of Congress, particularly in its classification of stone products for depletion allowances.

We recognized these problems when we heard and determined the Wagner case and, from the reported cases, we note that many Courts have undertaken the solution of similar problems growing out of these Statutes.

After an intense study of the briefs and the citations and the record in this case, along with the stipulations and exhibits, we conclude as follows:

1. That the product here involved is dolomite within the commonly understood commercial meaning of the term, and that it should receive the depletion allowance allotted to dolomite by the Congress, to wit, 10%;

2. That the decision in the Wagner case is not dispositive of the issues in these cases because the facts are substantially different;

3. That, in light of the Taxpayers' burden to prove that they come squarely within the terms of the Statute, we are not convinced that the product of Taxpayers' quarries is capable of use for metallurgical or chemical purposes.

1. As we have heretofore stated, the parties agree that the product of Taxpayers' quarries is "dolomite". With this agreement we are in accord. We have looked upon "dolomite" as being a rock rich in magnesium carbonates, and composed of 90% or more of the mineral dolomite, and we have looked upon "limestone" as being a high calcium carbonate rock having a calcium carbonate content far in excess of the magnesium content. In other words, in the dolomite the magnesium carbonate content is in high percentage, ranging up to 46%, and in the limestone the calcium carbonate content is high, ranging up to 95%. Various authorities differ on the percentage of content of magnesium or calcium carbonates in order to arrive at a determination of whether the rock is dolomite or limestone. In the product of Taxpayers, we believe that it is pretty well agreed between the parties that the calcium carbonate content ranges from 52% to 56%, that the magnesium carbonate content ranges from 41% to 45%, and that the impurities constitute 3% or less. It does not seem to be in serious dispute that Taxpayers' stone contained in excess of 90% of the mineral dolomite.

We, therefore, agree with Counsel that the product here in question is a high grade "dolomite". We agree then with the conclusion in the case of Halquist v. Commissioner of Internal Revenue, 33 T.C. ——, wherein it is said:

"We do not believe it is within our province to assume that Congress intended to include a high-grade dolomite within the classification chemical or metallurgical grade limestone when it specifically granted a 10 per cent rate to dolomite. * * * "

2. Taxpayers rely substantially on the Wagner Quarries decision and the definition of the Court of Appeals in that case, 260 F.2d 907, at page 908, wherein it said:

"Based upon a fair appraisal of the testimony of the experts, a reasonable interpretation of congressional intent in using the words 'metallurgical grade limestone, chemical grade limestone,' would mean a limestone of high carbonate content with a very low silica or impurities percentage, capable of use for metallurgical or chemical purposes. * * * "

Counsel for Taxpayers rely, in addition, upon the testimony of Dr. Herbert F. Kriege, a capable and experienced chemist, who was of the opinion that the Taxpayers' product was suitable for metallurgical or chemical purposes.

The product of the Wagner Quarries was, in our estimation, a high quality limestone rich in calcium carbonate and comparatively low in magnesium carbonate. In fact, it was our conclusion, from the testimony in that case, that the calcium carbonate content was approximately 85%, the magnesium carbonate content approximately 10%, with impurities that approximated 5% or less. We concluded that here, unquestionably, was a high quality limestone that was capable of use for metallurgical or chemical purposes. The Court of Appeals agreed with us.

In the cases before us, the magnesium carbonate content rises to as high as 45% and ranges between 41% to 45%. Here, assuredly, we have a magnesium rock that is substantially different in content than the rock considered in the Wagner case. In the Wagner case, there was no claim that the product was dolomite, in fact, it seemed to be agreed that it was a rich limestone, and the main objection of the Government to the classification of the rock in the 15% bracket was the fact that it did not approximate 92% to 95% calcium carbonates.

We believe that the facts revolving around the character of the stone products of the Taxpayers here, as compared

with the character of the product of the Wagner Quarries, makes for us a different situation that must be dealt with without adherence to the interpretation set down by the Court of Appeals in the Wagner case for, in the Wagner case, the Court was admittedly dealing with a high quality limestone.

3. We are not here convinced that the product of Taxpayers' quarries is capable of use for metallurgical or chemical purposes.

Taxpayers rely upon the testimony of Dr. Kriege who felt that, in his opinion, the product of Taxpayers' quarries was suitable for metallurgical or chemical purposes. This was the opinion of the witness unbuttressed by actualities that assisted us in the Wagner case. In the Wagner case, we concluded from the evidence that approximately 40% of the stone mined and marketed was sold for metallurgical and chemical uses. In other words, the product was so inviting as to induce the metallurgical and chemical industries to purchase it for their uses.

■ In the cases before us, there is no evidence that the product of Taxpayers' quarries was inviting to the metallurgical and chemical industries. We conclude, therefore, that this product might possibly be usable for certain metallurgical or chemical purposes where economic factors may, in the opinion of the user, justify its use, but we cannot conclude that it is suitable for these purposes within the terms of the definition laid down by the Court of Appeals.

In conclusion, we believe that if we were to award to this high-grade dolomite a 15% depletion allowance, we would distort the Statute, in fact nullify it insofar as the Congressional classification of dolomite existed in the years in question. We believe that we must adhere to what appears to us to be the intent of Congress. The alternative claim for relief is granted.

■ Taxpayer, The Erie Stone Company admits that certain rock mined from its Huntington quarry in the relevant years, described in the record as No. 63 limestone, and constituting only about 10% of the total output of that quarry during the years in question, was not of metallurgical or chemical grade. Taxpayer, however, does seek a classification of this output as "dolomite", which would take a 10% rate of depletion. It admits that it contained too much impurities to qualify it for metallurgical or chemical purposes.

Defendant contends that this No. 63 stone qualifies as neither dolomite, calcium carbonate or magnesium carbonate, and should receive only a 5% depletion allowed to stone.

The parties seem pretty well agreed on the results of chemical tests known as "Company Tests", which analyze this No. 63 stone as follows:

| | |
|---|---|
| Calcium carbonates | 33.82 |
| Magnesium carbonates | 27.23 |
| Total carbonates | 61.05 |
| Total impurities | 38.25. |

The arguments of counsel in their briefs afford little help to the Court on this question, and the testimony in the cases is not very enlightening. We conclude, however, from the record, that this product may properly be classified as "stone" in accordance with what we believe to be the intent of Congress, for its potential use seems to be limited to that of ballast. It appears to possess no other virtues.

Judgment may be awarded in accordance with the above conclusions of the Court.

Findings of fact and conclusions of law, drawn in accordance with this opinion, may be prepared by defendant and lodged with the Court within twenty days. Within twenty days thereafter plaintiffs may note exceptions or suggested additions thereto.