**OHIO LIME COMPANY, a Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. C 62–170.

United States District Court
N. D. Ohio, W. D.
July 23, 1963.

---

Harold A. James, Doyle, Lewis & Warner, Toledo, Ohio, for plaintiff.

Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, Harland M. Britz, Asst. U. S. Atty., Toledo, Ohio, Louis F. Oberdorfer, Asst. Atty. Gen., Lyle M. Turner, David A. Wilson, Jr., Thomas F. Field, Attys., Dept. of Justice, Washington, D. C., for defendant.

Ross W. Shumaker and Carl V. Bruggeman, Toledo, Ohio, amicus curiae on behalf of National Lime & Stone Co. and Woodville Lime Products Co.

KLOEB, District Judge.

Plaintiff taxpayer is an Ohio corporation that owns and operates a stone quarry in Woodville, Ohio. In this case it seeks to recover an alleged overpayment of corporate income and excess profits taxes in a substantial sum, together with interest thereon. The taxable years at issue for the purpose of this motion for partial summary judgment concerns the years 1950 to 1953, inclusive.

The statute involved is the following:

Internal Revenue Code of 1939:

"§ 114.  BASIS FOR DEPRECIATION AND DEPLETION.

\*   \*   \*   \*   \*   \*

"(b) *Basis for depletion*

\*   \*   \*   \*   \*

"(4) (as amended by Sec. 124(a) of the Revenue Act of 1943, c. 63, 58 Stat. 21, and Sec. 319 of the Revenue Act of 1951, c. 521, 65 Stat. 452) *Percentage depletion for coal and metal mines and for certain other mines and natural mineral deposits.*

"(A) *In General.* The allowance for depletion under section 23(m) in the case of the following mines be—

\*   \*   \*   \*   \*

"(ii) in the case of   \*   \*   \* dolomite \* \* \* 10 per centum,
"(iii) in the case of   \*   \*   \* metallurgical grade limestone, chemical grade limestone, \* \* \* 15 per centum, \* \* \*."

The questions presented by the complaint are three in number:

1. What is the applicable rate of depletion under the provisions of the above section?
2. Upon what sale's price shall the applicable rate be based?
3. The proper rate of depreciation on a certain drain tile installed by the taxpayer in connection with the operation of the quarry.

The problem involved here pertains only to question number 1, to wit, "rate".

Defendant's motion for partial summary judgment reads as follows:

"The defendant moves the Court to enter, pursuant to Rule 56 of the Federal Rules of Civil Procedure, partial summary judgment in the defendant's favor on the ground that

there is no genuine issue as to any material fact regarding the chemical composition of the taxpayer's stone, and that, as a consequence, there can be no dispute as to the rate of depletion applicable to that mineral product.

"This motion is based on the plaintiff's complaint and the Government's answer thereto and on the November 5, 1962, deposition of Mr. Arnold H. Nieman, president of the Ohio Lime Company."

In support of the motion filed on January 29, 1963, defendant filed its brief, in which it summarized the question involved as follows:

"What is the applicable rate of depletion under the provisions of Section 114(b) (4) (A) of the Internal Revenue Code of 1939 for stone which contains approximately 55% calcium carbonate and approximately 43% magnesium carbonate?"

On March 14, 1963, taxpayer filed its brief in opposition to the motion, in which it states its position as follows:

"THE TAXPAYER'S MINERAL PRODUCT IS A DOLOMITIC LIMESTONE ENTITLED AS METALLURGICAL GRADE AND CHEMICAL GRADE LIMESTONE TO DEPLETION AT A RATE OF 15% DURING ITS TAXABLE YEARS COVERED BY THE INTERNAL REVENUE CODE OF 1939."

Under date of May 6, 1963, The National Lime and Stone Company, a plaintiff in this Court in case No. 8117 Civil, and The Woodville Lime Products Company, a plaintiff in this Court in case No. 8131 Civil, by leave of Court filed a brief herein as Amici Curiae in connection with the instant motion of defendant for partial summary judgment. These companies posed the question involved as being:

" * * * whether the Congress of the United States by the 1951 amendment to the Internal Revenue Code of 1939 (26 U.S.C. 114(b) (4) (A), 1952 ed.; 65 Stat. 497), relating to percentage depletion of nonmetallic minerals, intended that dolomitic limestone rock—i. e., rock with a high percentage of magnesium carbonate—of metallurgical or chemical grade, should be classified in the same statutory category for depletion purposes as limestone rock high in calcium carbonate of metallurgical or chemical grade."

Questions growing out of the statute herein involved have been previously litigated in this Court in the following cases: Wagner Quarries Co., Plaintiff v. United States, Defendant, Civil No. 7486, D.C., 154 F.Supp. 655, affirmed 260 F.2d 907 (6th Cir.), November 14, 1958; Erie Stone Co., a corp., Plaintiff v. United States, Defendant, Toledo Stone and Glass Sand Co., a corp., Plaintiff v. United States, Defendant, Civil Nos. 8005, 8006, D.C., 181 F.Supp. 942, affirmed 304 F.2d 331 (6th Cir.), June 4, 1962, cert. den. 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed. 2d 170.

In the Wagner Quarries case, we concluded that the Commissioner had no authority and no right to arbitrarily change the grade test prescribed by Congress to an "end use" test as provided in Treasury Decision No. 6031, and that the action, therefore, of the Commissioner was illegal, void and of no effect. This determination of the "end use" test has been supported in other jurisdictions, particularly the cases of H. Frazier Co. v. United States, 302 F.2d 521 (U. S. Court of Claims), and Virginian Limestone Corp. v. Commissioner, 26 T.C. 553. As a result of these and other decisions, the "end use" test as promulgated by the Commissioner is no longer relied upon.

The second question presented in the Wagner Quarries case was whether the limestone sold from plaintiff's quarry was actually of chemical or metallurgical grade within the meaning of the statute. The product of the quarry had a calcium carbonate content of approximately 85% and a magnesium carbonate content of approximately 10%. We concluded that it was a "metallurgical grade limestone,

chemical grade limestone", as classified in Section 114(b) (4) (A) (iii), and, therefore, entitled to a depletion allowance of 15%.

In the Erie Stone Company case, where the product involved had a calcium carbonate content of 52% to 56% and a magnesium carbonate content of 41% to 45%, we concluded that the product was a high-grade dolomite to be properly classified under the provisions of Section 114 (b) (4) (A) (ii) as "dolomite" with a depletion allowance of 10%.

In the Erie Stone Company case, we said the following (181 F.Supp. 942, at p. 944):

> "At the outset, there can be no question but that both parties agree that the product of these quarries was 'dolomite' within the commonly accepted definition of 'dolomite'. However, Taxpayers, although conceding that their product is properly classified as 'dolomite' take the position that it is a high-quality dolomitic limestone having a high-carbonate content and a very low percentage of impurities and suitable for metallurgical or chemical purposes, and that it, therefore, comes within the meaning of the Statute as interpreted by this Court and the Court of Appeals in the case of Wagner Quarries Company v. United States, D.C.N.D.Ohio, W. D.1957, 154 F.Supp. 655, affirmed 6 Cir. 1958, 260 F.2d 907."

Further, 181 F.Supp. on page 944, we said the following:

> "We have studied with great care the able arguments in the briefs of counsel on both sides, recognizing that the Statutes as they existed in the years in question (since amended) presented difficult problems for interpretation by the Courts in an effort to discern the intent of Congress, particularly in its classification of stone products for depletion allowances.
>
> \* \* \* \* \* \*

"After an intense study of the briefs and the citations and the record in this case, along with the stipulations and exhibits, we conclude as follows:

> "1. That the product here involved is dolomite within the commonly understood commercial meaning of the term, and that it should receive the depletion allowance allotted to dolomite by the Congress, to wit, 10%."

On page 945 of 181 F.Supp., we said the following:

> "\* \* \* In the product of Taxpayers, we believe that it is pretty well agreed between the parties that the calcium carbonate content ranges from 52% to 56%, that the magnesium carbonate content ranges from 41% to 45%, and that the impurities constitute 3% or less. \* \*
>
> "We, therefore, agree with Counsel that the product here in question is a high grade 'dolomite'. We agree then with the conclusion in the case of Halquist v. Commissioner of Internal Revenue, 33 T.C. 304, wherein it is said:
>
> > "'We do not believe it is within our province to assume that Congress intended to include a high-grade dolomite within the classification chemical or metallurgical grade limestone when it specifically granted a 10 per cent rate to dolomite. \* \* \*'"

And, 181 F.Supp. on page 946, we said the following:

> "In conclusion, we believe that if we were to award to this high-grade dolomite a 15% depletion allowance, we would distort the Statute, in fact nullify it insofar as the Congressional classification of dolomite existed in the years in question. We believe that we must adhere to what appears to us to be the intent of Congress. \* \* \*"

In the opinion of Circuit Judge Weick in The Erie Stone Company case, 304

F.2d 331, at page 350, we find the following:

> " * * * The statute does not distinguish between high and low grade dolomite. * * * "

We are now supported by the case of Vulcan Materials Company, Plaintiff-Appellant v. Sauber, et al., Defendant-Appellee, 306 F.2d 65, U. S. Court of Appeals, 7th Circuit, decided June 25, 1962, cert. den. 371 U.S. 912, 83 S.Ct. 257, 9 L.Ed.2d 171, where the product of the taxpayer was similar in mineral content to the product in the Erie case and in this case. There the Court said, 306 F.2d on page 69:

> " * * * when a 10 per cent rate was specifically provided for dolomite, that rate shall apply to all dolomite, * * * ".

In the question involved in the case before us, the brief of taxpayer in opposition to the defendant's motion has attached thereto an affidavit of Franklin Witmer, Vice President and General Manager of taxpayer, in support of the brief, and in this affidavit he concludes that only a negligible amount of the product of the taxpayer company is used for non-chemical or metallurgical purposes such as highway, driveway and roadway purposes.

In the affidavit of Lloyd E. Snyder, Secretary and Treasurer of the taxpayer company, he concludes that approximately 96½% of the product of the company is used for chemical and metallurgical purposes, and, in the affidavit of Dr. Herbert F. Kriege attached to the brief, he concludes that he would prefer to classify the mineral rock or stone from the taxpayer's quarry as dolomitic limestone.

In the affidavit of Dr. Kenneth K. Landes filed in support of the taxpayer's brief, he concludes that the rock product of the taxpayer falls within the definition of "dolomite".

In taxpayer's brief (p. 5), it is stated that, at the time defendant took the deposition of A. H. Nieman, President of plaintiff, there was submitted to defendant, at defendant's request, a chemical analysis of plaintiff's stone; that this analysis as submitted by plaintiff is typical of the stone from plaintiff's single quarry, which is quite uniform in its characteristics and is as follows:

> " * * *
> "Calcium Carbonate        55.04
> "Magnesium Carbonate    43.99
> " * * * ".

In the affidavit of Dr. Kriege, the calcium carbonate content is placed at 53.-70 and the magnesium carbonate content at 45.80. In taxpayer's brief, and on page 12 thereof, the above figures of Dr. Kriege are relied upon.

In the deposition of Mr. Arnold H. Nieman, President of taxpayer company, filed on January 17, 1963, at page 47, we find the following:

> "Q If you could give us, for the record, your rough statement as to the magnesium carbonate and the calcium carbonate content, then I think we can go into chemical symbols in another way in a moment.
>
> "A The calcium carbonate content would average around 55 percent, plus or minus fractions, and the magnesium carbonate content runs 43 and a fraction, plus or minus again."

On page 48, we find the following:

> "Q. In regard to magnesium carbonate you say 43, plus or minus. What would be the range of plus or minus, less than a percentage point?
>
> "A It can go 54 and 44, or 55 and 44 rather. In other words, the magnesium carbonate could be anywhere between 42½ and 44½, in there.
>
> "Q What would be the lowest magnesium carbonate content that you have seen?
>
> "A That I remember?
>
> "Q Yes, sir.
>
> "A Probably around 42 percent.
>
> "Q And the top magnesium carbonate?
>
> "A Close to 45.

"Q So that the range would be 42, possibly, at the lowest, and 45 maximum, possibly?

"A I would say that generally there might be particular cases where it would be over or under; could be."

With the calcium carbonate and magnesium carbonate content of taxpayer's product as above represented the defendant does not disagree, but, on the other hand, agrees that the relative proportions as disclosed in these various chemical analyses is correct. It thus appears that the product of the taxpayer in this case is substantially in accord with the product of the taxpayer in The Erie Stone case where it was well agreed between the parties that the calcium carbonate content ranges from 52% to 56%, and that the magnesium carbonate content ranges from 41% to 45%.

There is no dispute between the parties involved here but that at least 95% or more of the stone mined in taxpayer's quarry is marketed and sold for chemical and metallurgical purposes and, in the consideration of this motion, the Court assumes this to be an agreed fact. Therefore, for the purposes of this motion, there appears to be no disagreement as to the chemical content of taxpayer's product, and no disagreement over the fact that a very substantial portion of the product was and is used for chemical and metallurgical purposes and is capable of such use.

It is defendant's position, in support of its motion, that the question here presented has been considered by this Court in the Erie Stone Company case and affirmed by the Court of Appeals, and that the mineral content of taxpayer's stone is substantially the same as the mineral content of the stone product in the Erie Stone case; that the deposits involved in the Erie Stone case were dolomite within the commonly understood commercial meaning of the term, and that acceptance of taxpayer's contention that it has here a "dolomitic limestone" would nullify the separate statutory classification of dolomite; that the

"end use" test has been discarded, and that it should not be used to affect the rate of depletion to which the taxpayer may be entitled; that the decision of the issue here involved would leave for resolution at the trial of the action the two remaining questions as to the representative field or market price for the taxpayer's product during the years in question, and the question concerning the proper rate of depreciation on a drain tile installed by the taxpayer, both of which questions would require some evidence in support of and in opposition to the positions of the parties herein.

The taxpayer argues that it has here a dolomitic limestone that is a high-quality dolomite which is entitled to classification as metallurgical and chemical grade limestone, and to a depletion allowance of 15%.

The same position as taken by taxpayer herein was taken by taxpayer in the Erie Stone case, wherein it argued that its product should be properly classified as dolomite, but that it was a "high-quality dolomitic limestone".

In the Erie case, we concluded that a high-quality dolomitic limestone was dolomite, and that the Congress had not differentiated in the dolomite classification between high or low grade dolomite. It simply said "dolomite 10 per centum". It appears, therefore, that taxpayer in the instant case is seeking a review or a reconsideration of the decision arrived at in the Erie Stone Company case. We are of the opinion that the question involved here has been decided and ought not again be re-litigated. We believe that it has been definitely determined not only in the Erie case but in other jurisdictions that dolomite is commonly known as a stone which is relatively high in magnesium carbonate content, and that it would be inappropriate to attempt a review of this question on the ground that the product here is an exceptionally high-grade dolomite; that the Congress specifically termed dolomite as opposed to limestone of a chemical and metallurgical grade, and that taxpayer's product fall-

ing within the confines of the product in the Erie Stone case should be and is properly classified as dolomite with a 10% depletion allowance. We believe that whether a product is termed a "high-grade dolomitic limestone" or a "dolomitic limestone", it is still "dolomite" within the intent of Congress.

 In the Wagner case where the product had a very high calcium carbonate content, we admitted evidence disclosing that up to 40% of the product was actually used for chemical and metallurgical purposes. At that time we were searching in an effort to discern the "intent" of Congress when it established these various classifications, and particularly the classification of "limestone of metallurgical and chemical grade". In the Erie case, the taxpayer placed no reliance upon the "end use" of the product and, in the course of the trial, we ruled out all efforts of the defendant Government to inject the "end use" test because the evidence was conclusive as to what the product consisted of. In each of these cases, Wagner and Erie, the "end use" evidence, or lack thereof, was considered primarily in support of our conclusions as to what the "intent" of Congress was, and in neither case was the "end use" test considered in determining the applicable grade and depletion rate. The test we applied in both cases and in the final analysis, with regard to the various rates for depletion, was what the product consisted of and not what it was used for. In view of the agreed chemical content of taxpayer's product, the potential "end use" of the product cannot govern here.

Based upon the undisputed facts here, and applying the test as to what the product of the taxpayer's quarry consists of and not what it is used for, we must arrive at the conclusion that the motion for partial summary judgment should be and is sustained.

The remaining questions, if not compromised and agreed to by the parties, may be submitted in due course.

Defendant may, within fifteen (15) days, prepare and lodge with the Court findings of fact and conclusions of law drawn in accordance with this memorandum opinion, and the taxpayer may, within ten (10) days thereafter, lodge with the Court its exceptions or suggested additions thereto. An order may be drawn accordingly.