The FRANCE STONE COMPANY, a Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 7827.

United States District Court
N. D. Ohio, W. D.

Sept. 22, 1964.

Shumaker, Loop & Kendrick, John J. Kendrick, Carl V. Bruggeman, Robert B. Gosline, Toledo, Ohio, for plaintiff.

Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, John G. Mattimoe, Asst. U. S. Atty., Toledo, Ohio, Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Thomas F. Field, Attorneys, Department of Justice, Washington, D. C., for defendant.

KLOEB, District Judge.

This is an action to recover corporate income and excess profits taxes together with interest, and the taxable years at issue are the calendar years 1951 through 1953. The primary question involved is whether or not the stone produced by the France Stone Company from its six quarries is entitled to percentage depletion under Section 114(b) (4) (A) of the Internal Revenue Code of 1939 at the rate of 10% as dolomite, or at a rate of 15% as chemical or metallurgical grade limestone.

Questions growing out of the statute herein involved have been previously litigated in this Court in the following cases: Wagner Quarries Co., Plaintiff v. United States, Defendant, Civil No. 7486, D.C., 154 F.Supp. 655, Aff. 260 F.2d 907 (6th Cir.), November 14, 1958; Erie Stone Co., a corporation, Plaintiff v. United States, Defendant, Toledo Stone and Glass Sand Co., a corporation, Plaintiff v. United States, Defendant, Civil Nos. 8005, 8006, D.C., 181 F.Supp. 942, affirmed in part and reversed in part 304 F.2d 331, June 4, 1962, rehearing denied August 7, 1962, cert. denied 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170; Ohio Lime Co., a corporation, Plaintiff v. United States of America, Defendant, Civil No. C 62-170, D.C., July 23, 1963, 219 F.Supp. 146.

In the Wagner Quarries case, supra, the primary question involved was whether the stone sold from plaintiff's quarry was actually of chemical or metallurgical grade within the meaning of the statute. The product of the quarry had a calcium carbonate content of approximately 85% and a magnesium carbonate content of approximately 10%. We concluded that it was a metallurgical grade limestone, chemical grade limestone, as classified in Section 114(b) (4) (A) (iii) and, therefore, entitled to a depletion allowance of 15%. The Court of Appeals affirmed.

In the Erie Stone and Toledo Stone and Glass Sand cases, supra, where the product involved had a calcium carbonate content of 52% to 56%, and a magnesium carbonate content of 41% to 45%, and where the mineral dolomite predominated, we concluded that the product was a high-grade dolomite to be properly classified under the provisions of Section 114 (b) (4) (A) (ii) as "dolomite" with a depletion allowance of 10%. In our findings of fact and conclusions of law in that case we recited the following:

"FINDINGS OF FACT

" * * *

"11. The stone deposits quarried by the taxpayers were (with one exception) relatively uniform, sedimentary, carbonate rocks and contained a minimum of 90 per cent of the mineral dolomite. * * *

Calcium carbonate 52–56 per cent
Magnesium
carbonate 41–45 per cent
* * * * * *

"12. The one exception was the so-called No. 63 stone from the Huntington quarry which possessed a proximate chemical analysis as follows (Ex. 64; Ex. G.):

Calcium carbonate 33.82 per cent
Magnesium
carbonate 27.23 per cent
Impurities 28.75 per cent.

"13. The stone deposits quarried by the taxpayer were (with the exception of the Huntington No. 63) during each and all of the years in question the rock dolomite. * * * The taxpayers' stone deposits were not limestone of chemical grade or metallurgical grade. The No. 63 stone, quarried at Huntington, Indiana by the Erie Stone Company was not chemical or metallurgical grade limestone, calcium carbonates, magnesium carbonates or dolomite but was stone.

"14. The name dolomite refers to both a rock and a mineral. The rock dolomite is a sedimentary rock, rich in magnesium carbonates and composed predominantly of the mineral dolomite. * * * The mineral dolomite, which exists in nature as the predominant constituent of the rock dolomite, possesses a specific atomic structure and has a chemical composition of 45.73 magnesium carbonate and 54.27 calcium carbonate. * * * Dolomite rock is not limestone inasmuch as the term 'limestone' refers to a sedimentary rock, composed predominantly of the mineral calcite, in which the calcium carbonate content is far in excess of the magnesium carbonate content and may range as high as 95 per cent calcium carbonate or higher. * * * "

Conclusion of Law, paragraph 3, reads as follows:

"3. The names of minerals enumerated in Section 114(b) (4) (A) of the Internal Revenue Code of 1939 are intended to have their 'commonly understood commercial meaning'." (Citing Wagner Quarries v. United States, 154 F.Supp. 555, Aff. 260 F. 2d 907). "Dolomite within its commonly understood commercial meaning is a sedimentary rock rich in magnesium carbonates and composed predominantly of the mineral dolomite. * * * ".

The Court of Appeals, in 304 F.2d 331, affirmed in all matters except as to the No. 63 stone. As to the latter, on page 350 we find the following statement by Circuit Judge Weick:

"No. 63 stone which contained carbonates of 61.05 per cent was classified by the District Court, not as dolomite, but as stone and held entitled to the lowest depletion allowance of 5%. In my judgment, since this stone contained more than 50% of the mineral dolomite, it was entitled to a classification as dolomite with a 10% depletion allowance. Blue Ridge Stone Corp. v. United States, 170 F.Supp. 569 (D.C.Va., 1959).

"The fact that the stone contained impurities of 38.25% means simply that it is a low grade dolomite. The statute does not distinguish between high and low grade dolomite. Either grade is entitled to a 10% depletion allowance."

In the Ohio Lime case, supra, we were dealing with a high-grade dolomite and in connection with the No. 63 stone in the Erie Stone case it was concluded that that stone was a low-grade dolomite. In either case, dolomite.

In the case before us, there was filed on October 7, 1963, a basic stipulation of facts, and in this stipulation the parties agreed in Table 3 therein that the product of the Waterville, Monroe, North Baltimore, Holland, and Bellevue—Middle 8 Foot Face, and Bellevue—Lower 15 Foot Face, was dolomite entitled to a percentage depletion under the Internal Revenue Code at the rate of 10%. We, therefore, have no problem as concerns the product of these particular quarries.

Also, under Table 4, the parties agreed that the mineral product sold from the Upper 10 Foot Face of the Keeport Quarry was metallurgical or chemical grade limestone entitled to a depletion allowance of 15%.

Therefore, at the opening of the trial we were confronted with a problem growing out of the output of the Bellevue Quarry Upper 18 Foot Face and the Keeport Quarry Lower 30 Foot Face. In the Bellevue Upper 18 Foot Face, it was agreed that the calcium carbonate content was 77.04 and the magnesium carbonate content 23.62, and that the average of 254 tests made by Interlake Iron Corporation was as follows: Calcium carbonate 74.43, magnesium carbonate 22.51. It was further agreed that the product of Keeport Lower 30 Foot Face was calcium carbonate 70.88, magnesium carbonate 25.94, with the Upper 10 Foot output intermingled.

The trial of the case was held beginning October 9, 1963, and ending October 15. The transcript, thereafter submitted, contained 674 pages. Extensive and numerous briefs were thereafter filed.

We are of the opinion that the Erie Stone Company case, including the findings of fact and conclusions of law from which we have quoted, as affirmed by the Court of Appeals and including the opinion of the Sixth Circuit regarding the No. 63 stone, provides a complete answer for the decision of this case. In that case, it was found that the mineral dolomite predominated and the product of the quarries was classified as dolomite.

Both of the parties in this case have made an analysis of the stone produced from the quarries in question and, regardless of which analysis we use, dolomite is the dominant mineral constituent of the product. There is no evidence that the mineral calcite predominates in the product of either of the quarries in question. Measured by the rules and principles applied in the Wagner Quarries case, the Erie Stone Company case, and the Ohio Lime case, we feel that we could not, in the state of the record here, classify the product from the two quarries herein involved as stone of a chemical or metallurgical grade and, therefore, entitled to a 15% depletion allowance. We do believe that, bound as we are by the decisions of the Court of Appeals in the Wagner and the Erie cases, under the evidence here, we are dealing with a dolomite as designated by Congress to be entitled to a 10% depletion allowance.

The second question proposed as to whether the plaintiff is entitled to base its claim for percentage depletion on the character of the rock mixture which it sells at its Keeport, Indiana quarry, we answer that question in the negative. We believe that it should base its claim for depletion allowance on the character of its natural mineral deposit in place.

Defendant may, within fifteen (15) days, prepare and lodge with the Court findings of fact and conclusions of law drawn in accordance with this opinion, and the plaintiff may, within ten (10) days thereafter, lodge with the Court its exceptions and/or suggested additions thereto.